# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY ANDREW HAWKINS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>RAYTHEL FISHER,<br><br>　　　　Respondent. | Case No. 1:18-cv-01133-LJO-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Wesley Andrew Hawkins is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts that his plea was involuntary and counsel was ineffective for failing to inform him of the possible consequences of a probation violation. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

On April 4, 2014, Petitioner pleaded no contest to one count of forcible oral copulation, in violation of California Penal Code section 288a(c)(2)(A). (CT[1] 73–80; 1 Aug. RT[2] 4–5). In accordance with the plea agreement, imposition of sentence was suspended and Petitioner was

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on November 21, 2018. (ECF No. 15).
[2] "Aug. RT" refers to the Augmented Reporter's Transcript on Appeal lodged by Respondent on November 21, 2018. (ECF No. 15).

1

placed on probation for a period of three years, to include one year in the county jail with credit for time served. (CT 81; 2 Aug. RT 9). On June 4, 2015, Petitioner was found to be in violation of probation and had his probation revoked. (CT 103; RT[3] 54). Thereafter, Petitioner was sentenced to an imprisonment term of eight years. (CT 116, 122; RT 62–63).

On February 24, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Hawkins, No. F071858, 2017 WL 728297 (Cal. Ct. App. Feb. 24, 2017). On May 24, 2017, the California Supreme Court denied the petition for review. (LDs[4] 5, 6). On December 4, 2017, the United States Supreme Court denied the petition for writ of *certiorari*. Hawkins v. California, 138 S. Ct. 516 (2017). Meanwhile, Petitioner also filed multiple state habeas petitions, which were all denied. (LDs 12–23).

On August 22, 2018, Petitioner commenced the instant proceedings by filing a federal habeas petition, which alleges the following claims for relief: (1) involuntary plea; and (2) ineffective assistance of trial counsel. (ECF No. 1). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 14, 18).

## II.

## STATEMENT OF FACTS[5]

> On September 2, 2013, around 1:00 a.m., Kern County Sheriff's Deputy Carly Snow was dispatched to a location in Kern County to meet with the victim, Andrea A. Andrea reported that she and Hawkins were in a dating relationship and living together; however, Hawkins abuses her.
>
> The night of September 1, Hawkins forced her into the shower while she was still dressed. When Andrea curled into the tub, Hawkins tried to pull her out of the bathtub by her hair. Andrea removed her clothes. Hawkins grabbed her by the hair, pulling her out of the shower, and forced her onto the bed. Hawkins then stated, " '[Y]ou know what time it is now, bitch? Do you know what you're going to do? You're going to suck this dick.' "
>
> Hawkins forced his penis into Andrea's mouth while she was laying on her back on the bed. When Andrea tried to move away, Hawkins punched her in the head. Andrea estimated Hawkins hit her about 20 times. Hawkins told Andrea she was going to put his penis " 'down your throat and be a good little girl.' " Andrea did not consent to any sexual contact and repeatedly asked Hawkins to stop, but

---

[3] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on November 21, 2018. (ECF No. 15).
[4] "LD" refers to the documents lodged by Respondent on November 21, 2018. (ECF No. 15).
[5] The Court relies on the California Court of Appeal's February 24, 2017 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

Hawkins became more forceful and forced his penis down her throat to the point where she could not breathe.

After the oral copulation stopped, Andrea stated Hawkins grabbed a dog leash and whipped her with the leash 20 to 30 times on her back and buttocks. When he finished whipping her, Hawkins put his penis back into her mouth and urinated into her mouth. When Hawkins left the room, Andrea ran naked to a neighbor's home to ask for help.

Deputy Snow examined Andrea and found several bruises and other marks. Andrea had a bruise on her stomach, a red mark on the back of her neck, scratches on her buttocks, and a bruise on her left breast that was six to eight inches long. These and other marks appeared to be consistent with being whipped with the dog leash. In addition, Snow saw what appeared to be a bite mark on Andrea's right buttock, and bruises around Andrea's eyes that appeared consistent with being punched in the face.

Hawkins was charged with forcible oral copulation, domestic abuse, and false imprisonment. Hawkins signed a felony advisement of rights, waiver and plea form on April 4, 2014. He initialed the provision that stated a violation of the terms of probation could subject him to a prison term.

On April 4, 2014, Hawkins entered a no contest plea to one count of forcible oral copulation, in exchange for a sentence of three years' felony probation, to include one year in the county jail, with credit for time served. Prior to accepting his plea, the trial court verified that Hawkins had read the plea form, understood it, and had discussed the form and the plea with his attorney.

The probation report prepared for sentencing did not recommend probation; the probation officer recommended the aggravated term of eight years in prison. The probation report noted there were no mitigating factors and three aggravating factors: a prior prison term; prior convictions; and prior performance on parole and probation was unsatisfactory. The probation report noted, however, that the plea agreement called for felony probation. The probation report noted that Hawkins had numerous prior convictions as a juvenile and adult, and there were outstanding warrants for his arrest issued by Lake County.

At the sentencing hearing on May 6, 2014, the trial court indicated that Hawkins "would not normally be a suitable candidate for probation, based on the serious facts and circumstances of the case ...." However, the trial court accepted the plea bargain and sentenced in accordance with the plea agreement. Among the conditions of probation imposed by the trial court were that Hawkins report to his probation officer monthly, "refrain from further violations of the law," and complete a one-year batterer's program.

At a probation violation hearing on June 4, 2015, Hawkins's probation officer, Anthony Mord, testified that he personally went over all the conditions of probation with Hawkins. Mord stated that Hawkins was arrested for three misdemeanors on three different dates, failed to enroll in counseling as required by the terms of probation, was arrested for a felony violation of section 69, resisting arrest, and failed to report to probation as required on at least two occasions. At the conclusion of the evidentiary hearing, the trial court found Hawkins had willfully violated the terms of his probation and revoked probation.

> Hawkins was before the court on June 25, 2015, for sentencing as a result of having been found to be in violation of probation. A supplemental probation report had been prepared for sentencing as a result of the probation violation, which recommended Hawkins be sentenced to a term of eight years in prison. Hawkins filed a statement in mitigation prior to sentencing.
>
> In imposing sentence, the trial court stated it had reviewed the supplemental probation report, statement in mitigation, and two letters submitted on behalf of Hawkins. The trial court stated it considered the "nature of the original offense" and what would be an appropriate sentence for that offense, as well as the "allegations relating to violating the terms of probation." The trial court revoked probation and imposed the aggravated term of eight years for the section 288a offense. Various fines and fees also were imposed.
>
> Hawkins filed a timely notice of appeal on June 26, 2015. Appellate counsel was appointed on August 15, 2015.
>
> The trial court filed a corrected abstract of judgment on June 15, 2016, correcting the fines, fees, and penalty assessments imposed.

Hawkins, 2017 WL 728297, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

///

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Involuntary Plea

In his first claim for relief, Petitioner asserts that his plea was involuntary because at the time of the plea, the trial court failed to advise Petitioner of the maximum term of confinement should Petitioner violate the terms of his probation. (ECF No. 1 at 4).[6] Respondent argues that the state court reasonably rejected Petitioner's involuntary plea claim. (ECF No. 14 at 12).

This claim was raised in Petitioner's state habeas petitions. On June 20, 2018, the California Supreme Court summarily denied Petitioner's state habeas petition. (LD 23). As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the August 3, 2017 decision of the California Court of Appeal, Fifth Appellate District. See Curiel v. Miller, 830 F.3d 864, 870 (9th Cir. 2016) (en banc) ("We have no cause to treat a state court's summary order with citations as anything but a 'reasoned' decision, provided that the state court's references reveal the basis for its decision.").

In denying the petition, the California Court of Appeal stated: "The 'Petition for Writ of Habeas Corpus,' filed on August 4, 2016, is denied. (*In re Resendiz* (2001) 25 Cal.4th 230, 253; *In re Moser* (1993) 6 Cal.4th 342, 352; *People v. Martinez* (1975) 46 Cal.App.3d 736, 745.)" (LD 21). The page in Moser cited by the California Court of Appeal stands for the proposition that a petitioner is "entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement." Moser, 6 Cal. 4th at 352. In Martinez, the court noted that "a subsequent revocation of probation is a 'collateral' rather than a 'direct' consequence of the guilty plea, and thus defendant need not be advised of such consequences." Martinez, 46 Cal. App. 3d at 745.

---
[6] Page numbers refer to the ECF page numbers stamped at the top of the page.

7

"The Constitution requires that a plea be knowing, intelligent, and voluntary." Loftis v. Almager, 704 F.3d 645, 647 (9th Cir. 2012) (citing Boykin v. Alabama, 395 U.S. 238, 244 (1969)). "The record must show that the defendant voluntarily relinquished his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers, and that he understood the nature of the charges and the consequences of his plea." Loftis, 704 F.3d at 647 (citations omitted).

The Ninth Circuit, "in harmony with other circuits, has held that although a defendant is entitled to be informed of the direct consequences of the plea, the court need not advise him of 'all the possible collateral consequences.'" Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (citations omitted). "The distinction between a direct and collateral consequence of a plea 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Torrey, 842 F.2d at 236 (quoting George v. Black, 732 F.2d 108, 110 (8th Cir. 1984)). "Thus, where the consequence is contingent upon action taken by an individual or individuals other th[a]n the sentencing court—such as another governmental agency *or the defendant himself*—the consequence is generally 'collateral.'" United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000) (emphasis added) (citations omitted).

The Court finds Torrey v. Estelle, *supra*, to be instructive. See Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005) (en banc) (Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents."). Pursuant to a plea agreement, Torrey pleaded guilty to one count of first-degree murder. The plea agreement provided that Torrey, who was nineteen years old at the time of the offense, would be committed to the California Youth Authority for execution of his sentence, which Torrey understood to be a term of six years so that he would be released at age twenty-five. Torrey, 842 F.2d at 234–35. After serving approximately two years, however, Torrey "was returned by the Youthful Offender Parole Board to the committing court for imposition of sentence to a state prison on the ground that he was not amenable to Youth Authority Treatment" in light of "the history of his behavior since the time of commitment and his attempt through unauthorized use of the mails to purchase a gun." Id. at 235. The court then sentenced Torrey to twenty-five years to life in state prison. Id.

Torrey filed a federal habeas petition arguing that his "due process rights [were] violated by the California court's failure to advise him, at the time his plea was entered, that he could be resentenced to the maximum term for murder if the Youth Authority found that he was not amenable to treatment." Id. In finding no due process violation, the Ninth Circuit noted that Torrey's "exclusion from the Youth Authority is contingent on many factors, including the future conduct of the defendant himself, and cannot be held to be a direct consequence of his plea." Torrey, 842 F.2d at 236. The Ninth Circuit concluded:

> In determining the voluntariness of a plea and whether it has been made intelligently, the court cannot be required to foresee an accused's future conduct and to predict all possible alternative ramifications thereof. Appellant's failure to succeed under the original terms of his sentence was simply an indefinite possibility on which the trial judge had no duty to speculate. Therefore, no due process violation arose out of the court's failure to advise appellant of the possibility of his return to court and commitment to state prison.

Torrey, 842 F.2d at 236.

Similarly, here, Petitioner's return to court, revocation of probation, and the resultant imposition of the maximum term for forcible oral copulation was contingent on the future conduct of Petitioner himself while on probation and thus, "cannot be held to be a direct consequence of his plea." Torrey, 842 F.2d at 236. Therefore, the trial court was not required to advise Petitioner at the time his plea was entered that he could be sentenced to the maximum term of confinement if Petitioner violated the terms of his probation.

In support of this claim, Petitioner cites to Iowa v. Tovar, 541 U.S. 77 (2004), which states: "The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the *range of allowable punishments* attendant upon the entry of a guilty plea." Id. at 81 (emphasis added). However, Tovar "concern[ed] the extent to which a trial judge, before accepting a guilty plea from an *uncounseled* defendant, must elaborate on the right to representation," and Petitioner does not identify Supreme Court authority holding that "the range of allowable punishments *attendant upon the entry of a guilty plea*" encompasses the possibility of revocation of probation and resultant imposition of an imprisonment term. Id. (emphasis added). See Moses,

555 F.3d at 754 ("[W]hen a Supreme Court decision does not squarely address the issue in the case or establish a legal principle that clearly extends to a new context . . . it cannot be said, under AEDPA, there is clearly established Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." (internal quotation marks, brackets, and citation omitted)).

Based on the foregoing, the Court finds that the state court's denial of Petitioner's involuntary plea claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

**B. Ineffective Assistance of Counsel**

In his second claim for relief, Petitioner asserts ineffective assistance of counsel for failure to advise Petitioner, at the time of his plea, that he would face the possibility of an eight-year sentence if he violated probation. (ECF No. 1 at 4). Respondent argues that the state court's rejection of this ineffective assistance of counsel claim was reasonable. (ECF No. 14 at 16). This claim was raised in Petitioner's state habeas petitions. As set forth in section IV(A), *supra*, the Court will "look through" the California Supreme Court's summary denial and examine the August 3, 2017 decision of the California Court of Appeal. (LD 21).

1. Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within

the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Analysis

Courts "have historically applied different tests for a defendant seeking to withdraw a guilty plea based on a due process violation and a defendant seeking to withdraw a guilty plea based on ineffective assistance of counsel." United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011) (citing Torrey, 842 F.2d at 235–37). The Supreme Court has applied the Strickland analysis to ineffective assistance claims arising from the plea process. See Missouri v. Frye, 566 U.S. 134, 140 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985).

11

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In the instant case, the California Court of Appeal cited to In re Resendiz, 25 Cal.4th 230, 253 (Cal. 2001) in denying Petitioner relief. (LD 21). The page in Resendiz cited by the California Court of Appeal discussed the test for prejudice caused by counsel's deficient advice to enter a plea, including the rule "that petitioner's assertion he would not have pled guilty if given competent advice 'must be corroborated independently by objective evidence.'" Resendiz, 25 Cal. 4th at 253 (quoting In re Alvernaz, 2 Cal. 4th 924, 938 (Cal. 1992)). The Ninth Circuit has recognized that "[t]here appears to be some uncertainty in this circuit as to the objective reasonableness of a state court's holding that uncorroborated, after-the-fact avowals are legally insufficient to establish that a petitioner would have accepted a plea bargain." Perez v. Rosario, 459 F.3d 943, 947 n.2 (9th Cir. 2006).

Nonetheless, even under *de novo* review,[7] Petitioner fails to establish that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. Again, the Court finds Torrey v. Estelle to be instructive. Torrey also addressed whether trial counsel was ineffective for failing to advise the petitioner of the possibility that he could return to court and be sentenced if he was removed from the custody of the Youth Authority. The Ninth Circuit held:

> Counsel's failure to predict defendant's future return to court for resentencing is not such "gross mischaracterization" as to be found below the level of competence demanded of defense attorneys. . . . This is not a case where the defendant was erroneously promised a

---

[7] "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." Panetti v. Quarterman, 551 U.S. 930, 953 (2007).

12

> sentence he did not receive. Defendant received the benefit of his bargain. Failure to advise him of a collateral penalty cannot be held to be below an objective standard of reasonableness.

Torrey, 842 F.2d at 237 (citations omitted). Similarly, here, Petitioner received the benefit of his bargain, and defense counsel's failure to advise Petitioner of a collateral penalty—that a violation of probation could result in revocation of probation and imposition of the maximum term of imprisonment—was not such gross mischaracterization as to be outside the range of competence demanded of criminal defense attorneys.[8]

Accordingly, Petitioner is not entitled to habeas relief based on ineffective assistance of counsel for failing to advise Petitioner, at the time of his plea, that he could face the possibility of an eight-year sentence if he violated probation. Petitioner's second claim for relief should be denied.

## V.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling

---

[8] The Court notes that the Supreme Court has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland." Padilla v. Kentucky, 559 U.S. 356, 365 (2010). Although the Supreme Court has found that the "collateral versus direct distinction is . . . ill suited to evaluating a Strickland claim concerning the *specific risk of deportation*," id. at 366 (emphasis added), the Supreme Court has not otherwise rejected the collateral and direct consequences distinction. See Padilla, 559 U.S. at 365 ("Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."); Chaidez v. United States, 568 U.S. 342, 349 (2013) ("We have never attempted to delineate the world of 'collateral consequences,' nor do we do so here." (citation omitted)).

pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 25, 2019**       /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE